```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
WENDY NABORRE, a/k/a WENDY DEVAUL,

                Plaintiff,
                                         MEMORANDUM & ORDER
        -against-                        19-CV-1886(JS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------X
APPEARANCES
For Plaintiff:      Craig Joseph Tortora, Esq.
                    Goldsmith & Tortora
                    2067 Jericho Turnpike
                    Commack, New York 11725

For Defendant:      Candace Scott Appleton, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271a Cadman Plaza East
                    Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff Wendy Naborre ("Plaintiff" or "Naborre") brings this action pursuant to Section 205(g) of the Social Security Act (42 U.S.C. § 405(g)), challenging the Commissioner of Social Security's denial of her application for disability insurance benefits. Before the Court are Plaintiff's motion for judgment on the pleadings (Pl. Mot., D.E. 7; Pl. Reply, D.E. 13), and the Commissioner's cross-motion for judgment on the pleadings (Comm'r Mot., D.E. 10; Comm'r Br., D.E. 11). For the following reasons, Plaintiff's motion is DENIED and the Commissioner's cross-motion is GRANTED.

BACKGROUND[1]

Plaintiff applied for disability insurance benefits on April 29, 2015, alleging disability from May 26, 2013. (R. 15.) Plaintiff noted many issues: cervical and thoracic spine herniations, lumbar spinal stenosis, arthritis in both knees, bursitis and tendonitis in her left shoulder, heart palpations, and stress. (R. 212.) According to Plaintiff, these conditions "cause her to experience pain, tingling, swelling, tenderness, restricted range of motion, muscle spasm, and weakness." (Pl. Mot. at 3.) After her application was denied on October 16, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on October 3, 2017. (R. 15; 38-82.) Plaintiff, who was represented by counsel, testified at the hearing; a vocational expert also testified. (R. at 15.)

On February 13, 2018, the ALJ issued his decision finding that Plaintiff was not disabled. (R. 31.) This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (R. 1-6.) This action followed. (Compl., D.E. 1.)

---

[1] The background is derived from the administrative record filed by the Commissioner. (R., pp. 1-399, D.E. 6; pp. 400-697, D.E. 6-1.) For purposes of this Memorandum & Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

2

DISCUSSION

I.  Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II.  The ALJ's Decision

Here, the ALJ applied the familiar five-step process (see 20 C.F.R. §§ 404.1520, 416.920) and concluded that Plaintiff was not disabled.  (R. 31.)  He found that (1) Plaintiff had not engaged in substantial gainful activity since May 26, 2013, the alleged onset date (R. 17); (2) she had severe impairments: obesity; cervical, thoracic, and lumbar degenerative disc disease; atrial fibrillation; right foot neuroma and arthritis; carpal tunnel syndrome; and lower extremity peripheral neuropathy (R. 17-21); (3) the impairments did not meet or equal the severity of any of the impairments listed in the Social Security Act (R. 21); (4) Plaintiff had the residual functional capacity to perform sedentary work with some limitations, but not her past relevant work as a

retail store manager (R. 22-29); and (5) there were jobs that existed during the relevant period that Plaintiff could perform (R. 29).

III. Analysis

Plaintiff contends that: (1) the ALJ erred in not finding certain impairments severe at step two; (2) the ALJ erred in concluding that she did not meet the listings requirements at step three; and (3) the RFC was not supported by substantial evidence because the ALJ improperly weighed the medical opinions, and she cannot perform sedentary work. (Pl. Mot. 11, 15, 16.) The Commissioner responds that the ALJ correctly applied legal standards in a decision supported by substantial evidence. (Comm'r Br. at 25, 27, 30.)

    A.    Severe Impairments at Step Two

Plaintiff first argues that the ALJ erred at step two in finding her left shoulder bursitis and tendinopathy, knee osteoarthritis, and fibromyalgia were non-severe. (Pl. Mot. at 11-15.) The ALJ found other impairments to be severe, however (R. 17), and continued to consider the non-severe impairments throughout his analysis (see, e.g., R. 27 (discussing Plaintiff's "fatigue, neck and back pain, decreased range of spinal motion, right leg pain, foot pain and swelling, and diminished lower extremity sensations" when formulating RFC); R. 22 (RFC "has been assessed based on all the evidence with consideration of the

4

limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments").) Thus, "[a]t step two, the ALJ identified other 'severe impairments,' . . . and therefore proceeded with the subsequent steps. And, in those subsequent steps, the ALJ specifically considered her [non-severe impairments of fatigue, neck, back, leg and foot pain, and decreased range of spinal motion]. Because these conditions were considered during the subsequent steps, any error was harmless." Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (citations omitted); see also Stanton v. Astrue, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (no "error warranting remand because the ALJ did identify severe impairments at step two, so [the] claim proceeded through the sequential evaluation process. Further, contrary to [the Plaintiff's] argument, the ALJ's decision makes clear that he considered the combination of impairments and the combined effect of all symptoms" in making his determination.") (internal quotation marks and citations omitted). Accordingly, the ALJ did not err at step two.

    B.    <u>Listings at Step Three</u>

Plaintiff next argues that the ALJ erred at step three because she meets Listing 1.04 (Disorder of the Spine). (Pl. Mot. at 15-16.) "To be considered disabled under Listing 1.04(A), a plaintiff must demonstrate evidence of a disorder of the spine that results in the compromise of a nerve root or the spinal cord

5

with evidence of nerve root compression." Houck v. Comm'r of Soc. Sec., No. 17-CV-1196, 2018 WL 6137123, at *4 (W.D.N.Y. Nov. 24, 2018) (citing 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, §§ 1.04, 1.04(A)). "It is the plaintiff's burden to demonstrate that [her] disability meets all of the specified medical criteria of a spinal disorder [and a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id. (citing Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S. Ct. 885, 891, 107 L. Ed. 2d 967 (1990)).

Here, the ALJ specifically found that "[w]hile [Plaintiff] has degenerative disc disease, disc bulging and disc herniations, there is no evidence that those conditions have resulted in the compromise of a nerve root . . . or the spinal cord." (R. 21.) Even if the ALJ did not specifically cite evidence in this paragraph of the decision, (see Pl. Mot. at 16), "the ALJ went on to discuss objective findings, examination results, and treatment notes in connection with Plaintiff's spinal impairments in the balance of the decision" and remand is not required. Houck, 2018 WL 6137123 at *5 ("simply because the medical evidence cited [ ] was not discussed contemporaneously with the step three analysis does not render it flawed"); see also Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112-13 (2d Cir. 2010) ("although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed

6

impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination.").

Further, contrary to Plaintiff's arguments, (Pl. Mot. at 15-16), it was her burden to demonstrate her spinal disorder met the listings. "To meet these requirements, a claimant must offer medical findings equal in severity to all requirements, which must be supported by medically acceptable clinical and laboratory diagnostic techniques." Debra E. v. Comm'r of Soc. Sec., No. 18-CV-0513, 2019 WL 4233162, at *7 (N.D.N.Y. Sept. 6, 2019). The record does not establish all the specified criteria for Listing 1.04, and accordingly, remand is not warranted on this basis.

C. The Treating Physician Rule

Plaintiff makes a cursory argument that the ALJ erred by assigning little weight to her treating physicians' opinions in formulating the RFC.[2] (Pl. Mot. at 17.) Plaintiff does not identify which doctors' opinions she believes the ALJ should have given more weight to; she merely argues that the ALJ should not

---

[2] The ALJ found Plaintiff had the capacity for sedentary work, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a).

7

have assigned great weight to consultative examiner Dr. Shapiro's opinion.

The "treating physician rule" provides that the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The regulations state:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis supplied).³ Nevertheless, the opinion of a treating physician "need not be given controlling weight where [it is] contradicted by other substantial evidence in the record." Molina v. Colvin, No. 13-CV-4701, 2014 WL 3925303, at *2 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citations omitted).

---

³ "While the Act was amended effective March 27, 2017 [to eliminate the treating physician rule], the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." Williams v. Colvin, No. 16-CV-2293, 2017 WL 3701480, at *1 (E.D.N.Y. Aug. 25, 2017); see also 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

8

When an ALJ does not afford controlling weight to the opinion of a treating physician, the ALJ must consider several factors: "(1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist." Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y. 2008). The ALJ must also set forth "'good reasons' for not crediting the opinion of a plaintiff's treating physician." Id. "An application of the treating physician rule is sufficient when the ALJ provides 'good reasons' for discounting a treating physician's opinion that reflect in substance the factors as set forth in [Section] 404.1527(d)(2), even though the ALJ declines to examine the factors with explicit reference to the regulation." Crowell v. Comm'r of Soc. Sec., 705 F. App'x 34, 35 (2d Cir. 2017) ("While the ALJ did not explicitly discuss the treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence.").

Here, in reaching his conclusions, the ALJ discussed the opinions of several sources. The ALJ assigned "great weight" to the opinion of state agency psychological consultant Dr. Shapiro, who stated that Plaintiff's "anxiety disorder caused no

9

restrictions in performing activities of daily living, mild difficulties in maintaining social functioning and maintaining concentration, persistence or pace and no repeated episodes of decompensation." (R. 27.) The ALJ gave this opinion great weight because it was "consistent with [Plaintiff's] performance at mental status examinations and her lack of formal mental health treatment." (R. 27.) Dr. Shapiro did not examine Plaintiff, but reviewed the record. (Comm'r Br. at 14.)

However, as relevant here, the ALJ assigned "little weight" to opinions of Dr. Acer, Dr. Rudansky, Nurse Practitioner Rogers, and Dr. Ali. In doing so, the ALJ found that the opinions were "inconsistent with the overall evidence of record. Additionally, portions of the opinions of Dr. Rudansky and Dr. Ali were vague and provided little explanation for the work-related restrictions provided." (R. 27.)

Dr. Acer, a psychologist, consultatively examined Plaintiff once in August 2015 and diagnosed "[a]djustment disorder with mixed anxiety and depressed mood." (R. 402.) She opined that Plaintiff could "follow and understand simple instructions and directions and appropriately perform simple tasks. She may have some trouble maintaining a regular schedule for long periods of time and dealing with stress." (R. 402.) Plaintiff's stress related issues did "not appear to be severely hampering function."

10

(R. 402.) Dr. Acer did not opine on Plaintiff's claimed physical impairments.

Dr. Rudansky, a neurologist, first saw Plaintiff in 2013. (R. 344-45.) After their consultation, he noted that Plaintiff "need[ed] to address the psychophysiological nature of the inflammatory cascade which is activating her musculoskeletal pain, episodic migraines as well as cognitive malaise." (R. 345.) He spoke to her about "the nature of chronic somatoform[4] pain" and recommended a Mediterranean diet, daily aerobic exercise, restorative sleep and melatonin, and self-actualization relaxation. (R. 345.)

As to her physical impairments, in 2017, after seeing Plaintiff for three months and as needed (R. 690), Dr. Rudansky completed an impairment questionnaire and diagnosed her with migraines, cognitive difficulties, depression, and fibromyalgia. (R. 690.) He noted clinical findings of "marked paracervical trigger point tenderness [and] limited flexion/rotation on neck" and had performed "EMG studies" and "neurocognitive testing" for

---

[4] According to the Mayo Clinic, "Somatic symptom disorder is characterized by an extreme focus on physical symptoms--such as pain or fatigue--that causes major emotional distress and problems functioning. You may or may not have another diagnosed medical condition associated with these symptoms, but your reaction to the symptoms is not normal." Somatic Symptom Disorder, available at https://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/symptoms-causes/syc-20377776.

11

laboratory and diagnostic testing. (R. 690-91.) He had treated her with physical therapy and trigger and Botox injections. (R. 694.) He opined that her pain was "moderate" and "constant" and her fatigue was "severe" and that her symptoms "constantly" interfered with her attention and concentration. (R. 692, 695.) He also opined that Plaintiff was incapable of tolerating even "low stress" at work. (R. 695.)

Dr. Rudansky further opined that in an eight-hour work day, Plaintiff could (1) sit for zero to one hours, (2) stand or walk for one hour, (3) not sit continuously, (4) not stand continuously, (5) lift zero to ten pounds occasionally and never lift anything over ten pounds, (6) carry zero to five pounds occasionally and never carry anything over five pounds, and that Plaintiff (1) would have to get up and walk around in less than one-hour intervals and (2) had significant limitations with repetitive reaching, handling, fingering or lifting. (R. 692-93.) Plaintiff could not push, pull, kneel, bend, or stoop. (R. 696.)

Dr. Ali, a consultative examiner, saw Plaintiff once in September 2015 for an internal medicine examination. (R. 404-07.) He diagnosed her with back pain, neck pain, and a history of asthma. (R. 407.) He noted a regular heart rhythm. (R. 406.) He observed that she had normal gait, could walk without difficulty, fully squat, and get up from her chair without difficulty. (R. 406.) Her cervical spine showed full flexion, extension, lateral

12

flexion bilaterally, and full rotary movement bilaterally. (R. 406.) She had intact hand and finger dexterity and full bilateral grip strength. (R. 407.) He opined that she had "mild restrictions for standing, walking, climbing, bending, lifting and carrying because of back pain." (R. 407.)

Here, the ALJ gave "little weight" to any medical opinion as to Plaintiff's physical impairments. These physical impairments necessarily underlie the RFC determination. And as to some factors, the RFC contradicts Dr. Rudansky's opinion: the ALJ found Plaintiff could stand or walk two hours in an eight-hour day, while Dr. Rudansky opined she could stand or walk for one hour and not stand continuously; the ALJ found Plaintiff could sit six hours in an eight-hour day, while Dr. Rudansky concluded she could sit for zero to one hours and not sit continuously; and the ALJ found Plaintiff could frequently reach, handle and finger, while Dr. Rudansky stated she had significant limitations with repetitive reaching, handling, fingering or lifting. (Compare R. 22 (ALJ RFC finding) with R. 692-93 (Dr. Rudansky impairment questionnaire).) The ALJ's RFC finding was largely consistent with Dr. Ali's opinion, however, who found that Plaintiff had only mild restrictions. (R. 407.)

The ALJ did not necessarily recount the factors (see 20 C.F.R. § 416.927) in assigning little weight to Dr. Rudansky's opinion. However, "[w]hile the ALJ did not explicitly discuss the

13

treating physician rule, he nonetheless stated that [the physician's] opinion . . . was contradictory to the rest of the record evidence." Crowell, 705 F. App'x 35.  The ALJ thoroughly recounted the treatment records, examination results, and recommendations from the doctors.  The Court finds these were good reasons to assign less weight to certain opinions.

For example, the ALJ took into account that in his initial exam, Dr. Rudansky observed "5/5 motor strength, intact extremity reflexes, normal extremity sensations, and normal gait," despite a "marked paracervical tenderness and a limited range of forward flexion and lateral rotation."  (R. 23.)  The ALJ also considered that in 2013, Dr. Penzi-Luxemberg observed normal extremity reflexes, 5/5 extremity strength, normal coordination, no extremity swelling, normal gait, but did note decrease range of spinal motion and pain.  (R. 23.)

Further, Dr. Gurtowski, an orthopedic surgeon who saw Plaintiff in 2013, observed a decreased range of cervical spinal motion but good upper extremity strength.  (R. 23.)  In 2014, while Plaintiff complained of hand pain, her x-rays were normal.  (R. 24.)  Moreover, in 2014, a rheumatologist found no motor weakness or reflex abnormalities, but noted cervical spine tenderness.  (R. 24.)  A 2014 thoracic spine MRI showed degenerative changes, a herniated disc, and disc bulge. (R. 24.)  In July 2014, while complaining of pain, Plaintiff was observed to have a normal gait,

14

muscle strength of 5/5, and normal balance. (R. 24.) In 2015, she had a normal gait, walked without difficulty, squatted fully, needed no help getting on and off the exam table, and rose from a chair without difficulty. She had full range of cervical spine motion and had 5/5 extremity strength and grip strength. (R. 25.) The ALJ also extensively discussed Plaintiff's heart issues. (R. 23-26.)

Finally, "'the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.'" Mollo v. Barnhart, 305 F. Supp. 2d 252, 263-64 (E.D.N.Y. 2004) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)); Fiumano v. Colvin, No. 13-CV-2848, 2013 WL 5937002, at *9 (E.D.N.Y. Nov. 4, 2013) ("An ALJ is not required to accept a claimant's testimony regarding the severity and persistence of [her] symptoms as true, but rather can evaluate the credibility of a claimant to arrive at an independent judgment based on the medical findings and other evidence"). Taking into account the record evidence, the ALJ here determined that Plaintiff "experiences limitations and some of the symptoms alleged, but not to the extent that is alleged." (R. 28.)

"Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence

15

available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) ("As the ALJ explained in his opinion, his RFC assessment took account of the opinions of all of these experts and the notes of other treatment providers"). Taking into account her "history of treatment, modest range of daily activities and the objective findings or record," the ALJ concluded she could perform sedentary work. (R. 26.) Accordingly, in consideration of the entire record, the Court finds the ALJ's decision was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion (D.E. 10) is GRANTED and Plaintiff's motion (D.E. 7) DENIED. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June   5  , 2020
       Central Islip, New York